MORRIS R. KEEN, Plaintiff, *v.* IRVING M. SCHNEIDER, Defendant.

Supreme Court, Special Term, Suffolk County, May 12, 1952.

*Otho S. Bowling* for plaintiff.

*Sidney R. Siben* and *Morris Feuerstein* for defendant.

PETTE, J. Plaintiff instituted this action for an injunction, and consequential damages alleged to have been sustained as a result of an alleged breach of a written contract.

The facts may be briefly stated as follows:

Plaintiff, a physician specializing in urology, had engaged defendant, also a physician, as his assistant. One purpose of such association was to give defendant enough cases to handle in order to qualify him as a diplomate of the American Board of Urology. The requirements of this board made it necessary for defendant to have two years of practice, with a certain minimum number of urological cases, exclusive of his internship.

In and about June, 1949, a written agreement was entered into by plaintiff with defendant, which provided, in substance, that (a) plaintiff would employ defendant as his assistant in the practice of urology, (b) for a period of three years, terminating June 14, 1952, (c) at a salary of $6,000 per year for the

first and second years, and at $7,500 for the third year, (d) defendant agreed to devote his full time, exclusively, as plaintiff's assistant in the practice of urology; (e) plaintiff would provide the medical cases to aid defendant in qualifying for his diplomate from the American Board of Urology; (f) all fees earned by defendant, except in workmen's compensation cases were to be deemed plaintiff's and accounted for to him; (g) the possibility of a partnership between them was to be explored at a later date, upon terms mutually agreeable; (h) plaintiff and defendant agreed to discuss the possibility and terms of a partnership during the third year of employment, on or about February 15, 1952; if such agreement of future partnership failed to transpire, then the employment agreement would expire on June 14, 1952. If the agreement was terminated on June 14, 1952, or sooner, by defendant's breach of contract then defendant expressly agreed not to engage in the practice of medicine, directly or indirectly, for a period of five years in the territory served by plaintiff, to wit: Huntington, Amityville, Patchogue and Port Jefferson, in the county of Suffolk, New York, and further (i) plaintiff would be entitled to injunctive relief to enforce said restrictive covenant, their agreement being predicated upon the fact that defendant, in his association in the practice of medicine with plaintiff would necessarily gain access to, and knowledge of, plaintiff's patients and it would be grossly unfair for defendant, upon premature termination of his employment by breach of contract, to compete with plaintiff under such circumstances.

The complaint alleges defendant's breach of the aforesaid agreement on or about August 31, 1951, and his entrance into competition with plaintiff in violation of the restrictive covenant (*supra*).

The answer denies the material allegations of the complaint.

A motion for a temporary injunction was argued before Mr. Justice CUFF, on or about March 31, 1952, who ruled in favor of plaintiff movant as follows: "Motion by plaintiff for a temporary injunction granted. I think that the contract was definite. Nothing has been brought to my attention indicating that such a contract is against public policy and, restricting my decision to the facts and circumstances in this case, I do not find that it is." (N. Y. L. J., April 1, 1952, p. 1298, col. 3.) Because this action was granted a preference, the respective parties agreed that no temporary injunction should be issued.

Testimony herein was duly taken at great length without a jury.

Each case of this character must stand upon its own particular facts and circumstances. (*Clark Paper & Mfg. Co.* v. *Stenacher,* 236 N. Y. 312, 320, 321.) After full and careful consideration of the testimony and documentary evidence, this court finds that the complaint is sufficient in law and that plaintiff has duly sustained the burden of proof pertaining thereto.

It is fundamental that the test to be applied in cases of this type is: *first,* is the injunction proposed necessary and reasonable for the protection of plaintiff's property and good will, and *second,* is it unreasonable, unjust, or oppressive to defendant?

In the analogous case of *Foster* v. *White* (248 App. Div. 451, affd. 273 N. Y. 596) plaintiffs were practicing physicians and copartners who conducted a medical center and clinic in the village of Penn Yan and contiguous territory, under the name of Foster-Hatch Medical Group. The action was brought in equity against defendant, also a practicing physician, for a perpetual injunction, in accordance with the provisions of a written contract, under which he was employed by them. The contract provided that defendant would not engage in the practice of medicine or surgery at any time in the county of Yates except while in the employment or associated with the Foster-Hatch Medical Group, without the written consent of plaintiffs; and, in case of breach of this covenant by him, he should pay plaintiffs the sum of $10,000 liquidated damages.

Special Term of the Supreme Court, Yates County, dismissed the complaint, holding that it was void, harsh and oppressive, and against public policy, and that the defendant's services were not unique or extraordinary, and that no professional secrets having been divulged to the defendant, the " restrictive covenant was more extensive than protection to the plaintiffs reasonably required ".

In reversing this order of Special Term, the Appellate Division, Fourth Department, said in its opinion, in part (pp. 453–454): " In the ordinary employment case equity will not restrain a breach of a covenant for personal services unless the services are of peculiar merit or character. This principle is without application in a suit to restrain an employee from violating an agreement not to engage in the same line of business, either for himself or in behalf of, or in conjunction with, others, after his employment under the contract containing such restrictive covenant has been terminated. (*National Linen Serv. Corp.* v. *Clower,* 179 Ga. 136; 175 S. E. 460; *Dyar Sales &*

*Machinery Co.* v. *Bleiler,* 106 Vt. 425; 175 Atl. 27; *Capital Laundry Co.* v. *Vannozzi,* 115 N. J. Eq. 26; 169 A. 554.) In the one case it is the damage suffered by the loss of the services of the exceptionally skilled employee; in the other, it is the damage to the employer's business by the setting up of a competitive business by a former employee. Agreements imposing restraints upon the rights of an employee to engage in competitive service after the termination of the contract of service are analogous to, and governed by, the same general rules applicable to restrictive covenants in the sales of business and good will. (*McCall Co.* v. *Wright,* 198 N. Y. 143, 150; *Eureka Laundry Co.* v. *Long,* 146 Wis. 205; 35 L. R. A. [N. S.] 119; 131 N. W. 412; *Fink & Sons, Inc.,* v. *Goldberg,* 101 N. J. Eq. 644; 139 A. 408; *Deuerling* v. *City Baking Co.,* 155 Md. 280; 67 A. L. R. 993, 994, and note; 141 A. 542; 13 C. J. 485.) ''

The Court of Appeals, affirming the order of the Appellate Division, held that the complaint stated facts sufficient to constitute a cause of action for injunctive relief restraining the defendant from practicing as a physician or surgeon in Yates County. (273 N. Y. 596.)

It is manifest that defendant physician, employed as plaintiff's assistant, must in the course of his duties become acquainted with the clientele of his employer and acquire their confidence and good will. It is clear that this precise situation was contemplated by the parties to this agreement, and that it was drawn to provide against the business and good will of plaintiff being lost to him in case of the severance of the employment and defendant's locating in plaintiff's territory described in the contract. Defendant's establishing himself in plaintiff's territory, although with a *pro forma* office in Farmingdale, Long Island, for the practice of medicine was a deliberate choice on his part to disregard and violate his solemn bond not to compete with his former employer. In such circumstances, a court of equity will extend the arm of injunction where the interests of justice require such a drastic remedy for the protection of a physician's business, practice and good will.

Injunctions permanently to refrain from the practice of a profession in defined localities have been sustained in many cases. (*Webster* v. *Williams,* 62 Ark. 101; *Storer* v. *Brock,* 351 Ill. 643, affg. 267 Ill. App. 138; *Ryan* v. *Hamilton,* 205 Ill. 191; *Cole* v. *Edwards,* 93 Iowa, 477; *Mills* v. *Cleveland,* 87 Kan. 549; *Hill* v. *Gudgell,* 9 Ky. L. Rep. 436; *Warfield* v. *Booth,* 33 Md. 63;

*Shaleen* v. *Stratte,* 188 Minn. 219; *Andrews* v. *Cosgriff,* 175 Minn. 431.)

The restrictive covenant contained in the agreement between the parties herein is reasonable and enforcible. According to the weight of authority as applied to contracts by physicians, surgeons, and others of kindred profession, relief for violation of these contracts will not be denied merely because the agreement may be unlimited as to time, where as to area the restraint is limited and reasonable. (*Foss* v. *Roby,* 195 Mass. 292; *Madson* v. *Johnson,* 164 Wis. 612; *Beatty* v. *Coble,* 142 Ind. 329.)

The court finds the contract to be clear and the obligation it imposes to be mutual. The facts and the relationship of the parties, both being physicians, present a situation appropriate for the granting of equitable relief to enforce its provisions.

Although plaintiff has failed to furnish sufficient proof as to actual monetary damage, nevertheless he has sustained the burden of proof as to the violation of the restrictive agreement by defendant, for which no adequate remedy at law exists, and accordingly, judgment is hereby granted in favor of plaintiff enjoining defendant from practicing as a physician or surgeon within the territory of Huntington, Amityville, Patchogue and Port Jefferson, as outlined on the topographical map of Suffolk County, New York, for a period of five years from June 14, 1952.

This decision will stand as the findings, but if any formal findings are necessary to judgment herein, same are hereby made.

Submit judgment on notice.